1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BENJAMIN H.,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

CASE NO. C21-5581-BAT

**ORDER REVERSING THE COMMISIONER'S FINAL DECISION**

     Plaintiff appeals the ALJ's decision finding him not disabled. The ALJ found Plaintiff last worked on March 1, 2020, Plaintiff's severe impairments are limited to inguinal hernia and syphilis, and Plaintiff retains the residual functional capacity (RFC) to perform past work as a barber and data entry clerk. Tr. 15-24. Plaintiff contends he his mental health impairments that are severe and the ALJ thus erred at step-two, and in determining RFC and his ability to perform past work. Dkt. 15.

     At step-two, the ALJ found Plaintiff has no severe mental health impairments. The ALJ noted although Plaintiff received in-patient treatment for anxiety, depression, and suicidal thinking, that starting in February 2020, Plaintiff's records show his "symptoms were controlled with treatment (Exhibit 6)." Tr. 18. The ALJ also noted Plaintiff was diagnosed with bipolar and then borderline personality disorder and with medication adjustments "did well". Tr. 19. The

ORDER REVERSING THE COMMISIONER'S FINAL DECISION - 1

ALJ observed that in December 2020, Plaintiff moved to Washington State and complained of nightmares, and reported sleeping in his car although he described his strengths as being funny and cooperative. *Id.* Dr. Mallory Grove noted Plaintiff had euthymic affect, some paranoia but otherwise was within normal limits. In January 2021, Plaintiff reported he was doing okay, and Dr. Grove observed Plaintiff was within normal limits. *Id.*

The ALJ concluded Plaintiff has no severe mental impairments because his mental health symptoms, including paranoia, were "well controlled with medications," and Plaintiff's normal clinical presentation was inconsistent with his claims of marked manic and depressive episodes, mental breakdown, and significant memory loss. *Id.* The ALJ also noted Plaintiff has not been "Baker Acted" (involuntarily committed) since the alleged onset date. *Id.* Additionally, the ALJ found Plaintiff's mental conditions did not meet the requirements of a Listed Impairment because they cause no more than mild limitations. Tr. 20.

The ALJ's conclusion that Plaintiff's mental health symptoms are "well controlled with medications" and inconsistent with his clinical presentation is not supported by substantial evidence. While Plaintiff at times reported improvement with medications, the record shows his symptoms waxed and waned. "As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F3d 995, 1017 (9th Cir. 2014).

Here, the record shows that on January 23, 2020, Plaintiff was examined and "recommended for individual therapy and medication management" Tr. 448. On February 7,

2020, Plaintiff was examined by ARNP Bernadette Frye, who reported Plaintiff exhibited signs of depression, anxiety and mania but had otherwise clinical presentation. Tr. 463.  On February 11, 2020, was Plaintiff evaluated for bipolar disorder and OCD. His medications were increased as Plaintiff exhibited signs of depression, anxiety, and mania. Plaintiff stated since starting treatment he has "minimally improved." Examination showed Plaintiff was impulsive, has intrusive thoughts, restless, anxious, and labile. Tr. 460. Plaintiff's speech was normal, his thought content was described as "rumination," and his memory, and judgment was fair.

On February 20, 2020, Plaintiff exhibits signs of depression and anxiety as exhibited by symptoms . . . symptoms controlled by treatment." Plaintiff has "borderline symptoms" and reports he is "very much improved" since starting treatment. Tr. 458

On May 26, 2020, Plaintiff had a phone medical session. His mother was present and indicated Plaintiff was having delusions. The treating ARNP disagreed and opined Plaintiff was "manic" and had high levels of anxiety. The ARNP reported Plaintiff's mood was anxious and euthymic Tr. 478

On June 24, 2020, ARNP Frye saw Plaintiff over ZOOM. Plaintiff stated felt suicidal in past week. The ARNP noted Plaintiff's mother called the police because Plaintiff would not answer the phone. Plaintiff was noted as exhibiting borderline personality disorder tendencies with mood swings that are rapid and occur from minute to minute; signs of depression and anxiety and psychosis as evidenced by significant weight loss and psychomotor agitation, feelings of worthlessness, lack of concentration, delusional thinking. Tr. 477. Plaintiff indicated since starting treatment he had "minimally improved."

Records between July 1  and July 30, 2020 indicate Plaintiff discussed mood changes and DBT techniques were recommended as therapy. Plaintiff was described as having euthymic

1    mood but was otherwise within normal limits. In a July 18, 2020, phone session, Plaintiff was

2    described has having anxious mood and affect. Tr. 489.  On October 9, 2020, it was noted "client

3    is doing well so his medications were continued." Tr. 496.  However, on March 5, 2021,

4    Harborview hospital records indicated Plaintiff was a "high suicide risk." Tr. 725

5        The record thus shows Plaintiff had periods where he seemed improved, followed by

6    periods of decline. Despite reports of "doing well," when Plaintiff was later seen at Harborview

7    Hospital, he was assessed as a "high suicide" risk. Hence, notwithstanding periods of

8    improvement, that included clinical presentations within normal limits, the record shows from

9    February 2020 through 2021 (the most recent medical records), Plaintiff continued to have

10   mental health symptoms that affected his functioning and required treatment.

11       The ALJ also reasoned Plaintiff's mental health impairments as non-severe because

12   Plaintiff's thinks he has a funny, bubbly personality, likes woodworking, can take care of his

13   grooming needs, has grossly intact attention, concentration and memory and is working toward

14   goals with little need of direction. The rationale does not withstand scrutiny. The record shows

15   Plaintiff has significant mood disorder that would have an impact on his ability to perform work

16   activity, not that he lacks cognitive functional ability. Plaintiff's belief he is bubbly, and the

17   ALJ's finding that he is working toward goals is belied by the fact that after more than a year of

18   treatment, Plaintiff appears to be floundering and was assessed a high risk of suicide. Given the

19   record, the Court concludes the ALJ's rationale is not supported by substantial evidence.

20       In finding Plaintiff's mental health impairment non-severe, the ALJ also touched upon the

21   opinions of state agency consultants Michael Plasay, Ph.D., and Candace Mihm, Ph.D., and

22   treating nurse practitioner Aimee Reyes, ARNP. Tr. 21. Dr. Plasay opined Plaintiff could

23   perform work in environments where "social interactions are infrequent, brief and largely task

ORDER REVERSING THE COMMISIONER'S FINAL DECISION - 4

1    oriented 9vs collaborative). Tr. 70. The doctor also assessed moderate limitations in Plaintiff's

2    ability to carry out detailed instructions, maintain attention and concentration, complete a normal

3    workday or week, have social interaction with the public and co-workers, get along with co-

4    workers without behavioral extremes, and adapt to changes. Tr. 69-70.

5           On reconsideration, Dr. Mihm, assessed moderate limitations in Plaintiff's ability to carry

6    out detailed instructions, maintain attention, complete a normal workday or week, interact with

7    the public and coworkers, get along with peers without behavioral extremes, and adapt to

8    changes. Tr. 86-87. Dr. Mihm concluded that "while mood, anxiety and personality d/o sx may

9    interfere with clmt's ability to perform detailed tasks, clmnt retains the capacity to perform

10   simple tasks in a limited social demand setting." Tr. 87.

11          The ALJ rejected the opinions of Drs. Plasay and Mihm because Plaintiff did not require

12   "acute care" his mental status examinations were largely within normal limits and Plaintiff can

13   take care of his personal care and likes to help others. Tr. 21. Substantial evidence does not

14   support the finding. The fact Plaintiff has not required consistent ongoing acute care, either by

15   hospitalization or involuntary commitment, does not establish Plaintiff does not have severe

16   mental impairments. Otherwise, no claimant other than the "hospitalized" would be deemed to

17   have a severe mental impairment. Further, both doctors noted Plaintiff's largely normal mental

18   status examinations (MSE) and that he could take care of his personal needs such as bathing.

19   However, they also both noted Plaintiff had limitations from his mood disorder which is

20   something distinct from the MSE findings or activities. The ALJ thus erred in discounting the

21   opinions of the state agency doctors.

22          The ALJ also rejected the opinions of ARNP Reyes on the grounds Plaintiff presented as

23   having normal mood and affect and normal attention and concentration, and that Ms. Reyes was

ORDER REVERSING THE COMMISIONER'S FINAL DECISION - 5

1   not treating Plaintiff for his mental condition and did not review Plaintiff's prior treatment notes.

2   Tr. 21. Ms. Reyes' records indicate Plaintiff was seen primarily for physical problems. However,

3   the record shows Ms. Reyes noted mental health problems and made a "psychiatry" referral. Tr.

4   626. The record thus does not support a finding Ms. Reyes treatment or assessment did not

5   include Plaintiff's mental health issues, or that she was unaware of his mental health issues.

6       The record does not indicate whether Ms. Reyes reviewed Plaintiff's mental health

7   treatment records. But as discussed above, those records indicate Plaintiff's mental impairments

8   are severe, not that his mental impairments have no consequential effect on his ability to work.

9   And lastly, Ms. Reyes opined Plaintiff's mood instability limited his ability to work, not that his

10  concentration, memory, and other MSE factors were limiting. Tr. 679. Thus, substantial evidence

11  does not support the ALJ's determination to discount Ms. Reyes' opinion on this basis.

12      The ALJ's rejection of the opinions of Drs. Plasay, and Mihm, and Ms. Reyes was

13  harmful. The RFC determination contained no mental health limitations, and the step four

14  determination excluded any discussion or consideration of Plaintiff's mental health impairments.

15  The ALJ found Plaintiff could perform past relevant work as a data entry clerk and a barber.

16  These are jobs that are inconsistent with the opinions of  Drs. Plasay, and Mihm that Plaintiff's

17  mental health problems could interfere with his ability to perform detailed tasks, and work with

18  others and the public.

19      The Court accordingly concludes the ALJ's assessment of the above opinions were

20  harmful and that the case should be remanded. The Court notes the parties argue over the ALJ's

21  assessment of Plaintiff's testimony of the severity of his symptoms. The ALJ rejected Plaintiff's

22  testimony as largely inconsistent with the medical record. On remand, the ALJ must reassess the

23

ORDER REVERSING THE COMMISIONER'S FINAL DECISION - 6

medical opinions above and the treatment record, and thus must necessarily reassess Plaintiff's

testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED,** and this case is

**REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall deem Plaintiff's mental health impairments severe at step two,

reassess the medical record, the opinions of Drs. Plasay, and Mihm, and Ms. Reyes, and

Plaintiff's testimony, develop the record and redetermine RFC as needed, and proceed to the

remaining steps of the disability evaluation process as appropriate.

DATED this 25ᵗʰ day of March, 2022.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge